1 | VENABLE LLP
2 | Douglas C. Emhoff (Cal. Bar No. 151049)
Jeffrey M. Tanzer (Cal. Bar No. 129437)
3 | 2049 Century Park East, Suite 2100
Los Angeles, California 90067
4 | Telephone: (310) 229-9900
Facsimile: (310) 229-9901
5 | E-mail: demhoff@venable.com
E-mail: jtanzer@venable.com

6 | Attorneys For Defendant
7 | MERCK & CO., INC.

FILED

06 NOV 21 PM 2: 41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: PDC          DEPUTY

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 | '06 CV 2574 H     AJB

11 | EDNA GOYA, an individual,                    CASE NO.:

12 |                 Plaintiff,

13 | v.                                           **DEFENDANT MERCK & CO.,
INC.'S NOTICE OF REMOVAL
14 | MERCK & CO., INC., a Corporation;            OF ACTION UNDER 28 U.S.C.
McKESSON CORPORATION, a                         § 1441 (b)**
15 | Corporation; and DOES 1 through 100,
inclusive,

16 |                 Defendants.

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck") hereby removes this action pursuant to 28 U.S.C. § 1441 from the Superior Court for the State of California for the County of San Diego to the United States District Court for the Southern District of California, and respectfully states to the Court the following:

**THE FOSAMAX® MDL PROCEEDINGS**

1.    This action involves allegations regarding the prescription medication FOSAMAX®. On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL Panel") issued an order transferring 18 FOSAMAX® products liability cases to

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

:ODMA\PCDOCS\BA2DOCS1\305894\1

the United States District Court for the Southern District of New York (Keenan, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Fosamax Products Liability Litigation,* MDL No. 1789. Although MDL-1789 was just created in mid-August, processes for quickly sending additional related cases to Judge Keenan are already in place. The MDL Panel has thus far issued 8 Conditional Transfer Orders and at least 43 cases involving FOSAMAX® have been transferred to MDL-1789. Merck will seek the transfer of this action to MDL-1789 and will, in the next week, provide the MDL Panel with notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

## BASIS FOR REMOVAL

2.     On October 12, 2006, Plaintiff Edna Goya commenced this action entitled *Goya v. Merck & Company, Inc., et al.,* Case No. GIN056222, against Merck in the Superior Court of the State of California for the County of San Diego. The Plaintiff contends that, as a result of her use of FOSAMAX®, as prescribed by her physician, she has suffered "permanent injuries," including "severe mental and physical pain and suffering and requiring "ongoing medical care and treatment," as well as "economic loss" and "emotional distress." Complaint ¶¶ 34-38. The Plaintiff purports to allege claims based upon strict liability, negligence, breach of express and implied warranties, "deceit by concealment," negligent misrepresentation, and claims based upon alleged misrepresentations under the California Business & Professions Code.

3.     For the reasons set forth in more detail below, this Court should assume jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. Plaintiff is a citizen and resident of the State of California. Merck is a resident of the State of New Jersey, as it is incorporated in the State of New Jersey and has its principal place of business there. Upon information and belief, defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business in San Francisco, California.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

NOTICE OF REMOVAL

::ODMA\PCDOCS\BA2DOCS1\305894\1

As more fully set forth below, however, Plaintiff has fraudulently joined McKesson as a party, and there is therefore complete diversity of citizenship between the parties who are properly joined and served.

## I. MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.     Plaintiff filed her Complaint in the Superior Court for the State of California for the County of San Diego on October 12, 2006. The Complaint was served on Merck on October 27, 2006, less than 30 days before the filing of this Notice of Removal. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).[1]

5.     No further proceedings have been had in this action.

6.     Venue is proper in this Court because it is "the district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a). Therefore, this action is properly removed to the Southern District of California pursuant to 28 U.S.C. § 84(d).

7.     All properly joined and served defendants consent to this removal. A co-defendant who is fraudulently joined, like McKesson, need not consent to or join in removal. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (fraudulently joined defendants need not consent to removal petition); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in a removal); *see also Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868 (1993) (same); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) (same).

8.     No previous application has been made for the relief requested herein.

---

[1] Because McKesson has been fraudulently joined, the date of service upon McKesson is not relevant for purposes of determining the timeliness of removal. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762-62 (9th Cir. 2002).

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

3

NOTICE OF REMOVAL

::ODMA\PCDOCS\BA2DOCS\305894\1

9.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Merck, which include the Summons, Complaint, Plaintiff's state court civil cover sheet, San Diego Superior Court Alternative Dispute Resolution Process notice and Superior Court of California, County of San Diego Notice of Case Assignment are attached hereto as Exhibits A through E.

10.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and on McKesson and a copy is being filed with the Clerk of the Superior Court for the State of California for the County of San Diego.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.    The amount in controversy requirement is satisfied.

12.    It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiff alleges that she was prescribed FOSAMAX® by her physician, and also alleges that that FOSAMAX® causes osteonecrosis of the jaw. Complaint ¶¶ 29-34. Plaintiff further contends that, as a result of ingesting FOSAMAX®, she "has suffered serious injury" and "requires and will require in the future ongoing medical care and treatment." *Id.* ¶ 34. Plaintiff also claims to have "suffered severe mental and physical pain and suffering," to have "sustained permanent injuries and emotional distress," and to have "sustained economic loss, including loss of earnings and diminution or loss of earning capacity." *Id.* ¶¶ 35-36. Plaintiff seeks "unlimited" compensatory damages, disgorgement, restitution, refunds, medical monitoring, loss of "care comfort society and companionship," and exemplary and punitive damages. *See* Civil Case Cover Sheet; Complaint ¶¶ 34-37, Complaint at 22 (Prayer for Relief (1)-(8)).

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

::ODMA\PCDOCS\BA2DOCS1\305894\1

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

13.    While there is no record of prior cases that specifically involve osteonecrosis of the jaw – which may be attributable to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996), *app. denied*, 564 N.W.2d 893 (Mich. 1997) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

14.    The Plaintiff's claims of "serious injury," and the compensatory and punitive damages that she seeks, thus far exceed this Court's minimum $75,000 jurisdictional limit.

::ODMA\PCDOCS\BA2DOCS1\305894\1

**B.** **McKesson has been fraudulently joined and, therefore, its citizenship can be ignored for purposes of removal.**

15. There is complete diversity between Plaintiff and Merck, the only defendant to even arguably be a proper party to this action.

16. According to the Complaint, Plaintiff Edna Goya was at the time of the filing of the Complaint and is now a citizen of the State of California. Complaint ¶ 13.

17. Merck is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

18. The Complaint includes fictitious defendants, whose citizenship is ignored for removal purposes. 28 U.S.C. § 1441(a).

19. For the reasons set forth below, the remaining named defendant – McKesson – is fraudulently joined. Therefore, its citizenship must be ignored for purposes of determining the propriety of removal.

20. A defendant is fraudulently joined and the defendant's presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against the resident defendant. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir.), *cert. denied*, 525 U.S. 963 (1998); *TPS Utilicom Services, Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100 (C.D.Cal. 2002). Stated differently, a defendant is fraudulently joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067 (citations omitted).

21. The fraudulent joinder of McKesson is obvious under well-settled state law because (i) Plaintiff has failed to make sufficient allegations as to any tortious conduct on the part of McKesson, (ii) the Plaintiff has failed to allege any causal link between

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

::ODMA\PCDOCS\BA2DOCS1\305894\1

1  McKesson's distribution and her alleged injuries; and (iii) there is no duty to warn by
2  McKesson under the circumstances alleged in the Complaint.

### i. Plaintiff's Complaint Lacks Any Specific Allegations Against McKesson.

5  22.    The Complaint is devoid of a single factual allegation directed at
6  McKesson that could support any cause of action.  The crux of the Plaintiff's Complaint
7  is an alleged failure to adequately warn of the alleged side effects associated with the
8  use of FOSAMAX®.  The *only* allegations made by Plaintiff against McKesson are that
9  "on information and belief, . . . McKesson was in the business of promoting and
10  distributing the pharmaceutical Fosamax . . ." and that McKesson "sold and distributed
11  Fosamax in California and in interstate commerce."  Complaint ¶ 16.

12  23.    Notably absent from the Complaint are any allegations that McKesson
13  made any specific representations or warranties to Plaintiff or Plaintiff's prescribing
14  physicians, or that Plaintiff or her prescribing physicians relied on any such specific
15  representation or warranty by McKesson.  In fact, no contact between McKesson and
16  Plaintiff or her prescribing physician is alleged at all.  For this reason, the Complaint is
17  simply not sufficient to hold McKesson liable under any legal theory.

18  24.    Throughout the Complaint, Plaintiff makes only general allegations against
19  "Defendants."  Such general assertions cannot substitute for the allegations of fact
20  required to state a cause of action against a particular defendant.  *See In re*
21  *Phenylpropanolamine (PPA) Products Liab. Litig.*, MDL No. 1047, relating to Civ. No.
22  C02-423R, Slip Op. at 5 (W.D. Wash. Nov. 27 2002) (stating that allegations directed
23  toward "defendants" or "all defendants" are insufficient) (Exhibit F hereto).  As the
24  Courts have recognized, a failure to make any material allegations against a defendant
25  is a significant indication that the joinder of that defendant is fraudulent.  *See, e.g.,*
26  *Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D.Cal. 1998) (finding in-state
27  defendants fraudulently joined where "no material allegations against [the in-state
28  defendants] were made"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S,

**VENABLE LLP**
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

7
::ODMA\PCDOCS\BA2DOCS1\305894\1

1    1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better

2    admission of fraudulent joinder of [the resident defendants]" than the failure of the

3    plaintiff "to set forth any specific factual allegations" against them).

4         25.    Because the Plaintiff has failed to present any specific allegations against

5    McKesson that could support Plaintiff's claims, she has failed to meet the minimal

6    pleading requirements to state a claim against McKesson. *See, e.g., Taylor AG*

7    *Industries v. Pure-Gro*, 54 F.3d 555, 558 (9th Cir. 1995) (dismissing breach of express

8    warranty claim against distributor due to plaintiff's failure to identify any statements

9    made by the distributor that were inconsistent with or went beyond either the product

10   labels or the product guide provided by the manufacturer); *see also Keith v. Buchanan*,

11   173 Cal. App. 3d 13, 25 (1985) (actual reliance is an element of implied warranty

12   claim); *B.L.M. v. Savo & Deitsch,* 55 Cal.App.4th 823, 834 (1997) (to state a claim of

13   negligent misrepresentation, plaintiff must at least identify the alleged

14   misrepresentation).

15        26.    As noted above, Plaintiffs' assertions directed toward all "Defendants"

16   cannot cure this deficiency.  *See In re PPA*, MDL No. 1407, Slip Op. at 5 (Exhibit F).

17   The general allegation that Defendants knew of the alleged risks associated with the use

18   of FOSAMAX® are particularly deficient because the wholly conclusory claims are

19   undermined and contradicted by the more specific allegations of Merck's purported

20   concealment and misrepresentation of the same information. *See, e.g., id.* at 7

21   (allegations that "manufacturer defendants concealed material facts regarding PPA

22   through product packaging, labeling, advertising, promotional campaigns and materials,

23   and other methods… directly undermines and contradicts the idea that [the resident

24   retail defendant] had knowledge or reason to know of alleged defects"). The allegations

25   of Merck's purported concealment and misrepresentation of the alleged risks of

26   FOSAMAX® belie any inference that McKesson, a wholesale distributor, had

27   knowledge of that which was allegedly concealed.

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

::ODMA\PCDOCS\BA2DOCS1\305894\1

### ii. Plaintiff's Complaint Lacks Any Allegations To Show Causation Attributable To McKesson.

27. Plaintiff's various claims against McKesson include claims for negligence, strict liability, and breach of express and implied warranty. It is axiomatic that in order to sustain any such claims, Plaintiff needs to prove that some action on the part of the defendant *caused* Plaintiff's alleged injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (to state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of the defendant); *Aronis v. Merck & Co., Inc.*, 2006 WL 2161731, *1 (E.D.Cal. May 5, 2005); *Cox v. Depuy Motech, Inc.*, 2000 WL 1160486, at *5 (S.D. Cal. 2000) (causation is an essential element of strict liability and negligence claims).

28. Plaintiff's complaint is completely devoid of any allegation that the FOSAMAX® she received was, in fact, distributed by McKesson. As noted above, the Complaint only alleges generally, and only "on information and belief," that McKesson "was in the business of promoting and distributing the pharmaceutical Fosamax" and that McKesson "sold and distributed Fosamax in California and in interstate commerce." Complaint ¶ 16.

29. Plaintiff never identifies any link between McKesson and the FOSAMAX® that Plaintiff received, and Plaintiff never identifies any contacts between McKesson and herself or her physician. Lacking any allegations of a causal connection between Plaintiff's alleged injuries and McKesson's distribution of FOSAMAX®, Plaintiff cannot maintain her claims against McKesson. *See Aronis v. Merck & Co., Inc.*, 2006 WL 2161731, at *1 (holding that because "Plaintiff makes no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries," McKesson was fraudulently joined in the action and denying motion for remand); *see also Becraft v. Ethicon*, 2000 WL 1721056, *3 (N.D.Cal. Nov. 2, 2000) (court may find that a distributor is fraudulently joined for purposes of removal unless the plaintiff can

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

9

::ODMA\PCDOCS\BA2DOCS\1\305894\1

1  produce evidence or establish a good faith basis for believing that the product plaintiff
2  received came from the defendant distributor).

3      30.   Plaintiff cannot maintain an action against McKesson here because she has
4  failed to allege that McKesson engaged in any conduct that would create liability and
5  has failed even to allege that McKesson distributed the product she alleges caused her
6  injury.  It is proper for the Court to find, under these circumstances, that McKesson has
7  been fraudulently joined.

### iii. Plaintiff Fails to State A Claim Against McKesson Because The
### Learned Intermediary Doctrine Serves to Bar Plaintiff's Claims.

10      31.   Even if Plaintiff had directed specific allegations at McKesson, there
11  remains no legal basis for such causes of action because Plaintiff's claims are based on
12  an alleged failure to warn and premised – as to McKesson – on a non-existent duty.
13  The rationale for the "learned intermediary" doctrine is that it is the physician who is in
14  the best position to determine whether a patient should take a prescription medication
15  and that imposing a duty on others to warn patients would threaten to undermine
16  reliance on the physician's informed judgment.  For this reason, courts have rejected
17  imposing liability on distributors like McKesson for failure to warn of the risk of a
18  prescribed medication.  *See, e.g., Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647
19  R (RZx), Slip Op. at 2 (C.D. Cal. April 28, 2003) ("The Court finds that there is no
20  possibility that plaintiffs could prove a cause of action against McKesson, an entity
21  which distributed this FDA-approved medication [Rezulin] to pharmacists in
22  California;" motion to remand denied) (Exhibit G hereto); *Skinner v. Warner-Lambert*
23  *Co.,* Case No. CV 03 1643-R (RZx), Slip Op. at 2 (C.D.Cal. April 28, 2003) (same)
24  (Exhibit H hereto); *In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 139, Slip Op.
25  at 3-4 (D.Minn. May 24, 2002) (retail distributor of prescription drugs fraudulently
26  joined) (Exhibit I hereto); *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d 922, 929
27  (Utah 2003) (declining to extend duty to warn to retail distributor of prescription diet

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

::ODMA\PCDOCS\BA2DOCS1\305894\1

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1   drug as their "ability to distribute prescription drugs is limited by the highly restricted

2   FDA-regulated drug distribution system in this country").

3       32.    Moreover, it is undisputed that through a collaborative process, Merck and

4   the FDA prepared the information to be included with the prescription medication

5   FOSAMAX®, with the FDA having final approval of the information that could be

6   presented.  Once the FDA had determined the form and content of the information, it is

7   a violation of federal law to augment the information.  *See* 21 U.S.C. § 331(k)

8   (prohibiting drug manufacturers and distributors from causing the "alteration,

9   mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"

10  of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal. 3d 1049,

11  1069 n. 12 (FDA regulates the testing, manufacturing, and marketing of drugs,

12  including the content of their warning labels).  Thus, McKesson could not change the

13  information it was given by Merck as approved by the FDA without violating federal

14  law.  No duty can be found where it requires a party to violate the law to fulfill it.

15      33.    Because no duty runs from a prescription drug distributor to a consumer

16  and because a prescription drug distributor has no ability to alter the warning of a

17  prescription drug, no claim can be stated by Plaintiff against McKesson based on an

18  alleged failure to warn.

19  / / / / /

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26

27

28

::ODMA\PCDOCS\BA2DOCS1\305894\1

WHEREFORE, Defendant Merck respectfully removes this action from the Superior Court of the State of California for the County of San Diego to this Court pursuant to 28 U.S.C. § 1441.

Dated:  November *21*, 2006

                                        VENABLE LLP
                                        DOUGLAS C. EMHOFF
                                        JEFFREY M. TANZER


                                        By _____
                                           Jeffrey M. Tanzer
                                           Attorneys for Defendant
                                           Merck & Co., Inc.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

12
NOTICE OF REMOVAL

::ODMA\PCDOCS\BA2DOCS1\305894\1

## TABLE OF CONTENTS

EXHIBIT A: SUMMONS ..................................................................... 14

EXHIBIT B: COMPLAINT ................................................................. 15

EXHIBIT C: PLAINTIFF'S STATE COURT CIVIL COVER SHEET ................. 38

EXHIBIT D: SAN DIEGO SUPERIOR COURT ALTERNATIVE

                DISPUTE RESOLUTION PROCESS NOTICE ............................... 39

EXHIBIT E: SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN

                DIEGO NOTICE OF CASE ASSIGNMENT .................................... 42

**EXHIBIT A**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MERCK & COMPANY, INC., a Corporation; MCKESSON
CORPORATION, a Corporation; and Does 1 through 100,
inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
EDNA GOYA,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

05 OCT 12 AM 11:21

/3:10
10-27-06

**CASE NUMBER:**
*(Número del Caso)* G I N 0 5 6 2 2 2

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California County of San Diego
325 S. Melrose Dr.
325 S. Melrose Dr.
Vista, CA 92083
North County

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*   626-685-9800   (626) 685-9808
Amy M. Boomhouwer
Gancedo & Nieves LLP
144 West Colorado Boulevard, Pasadena, CA 91105

**DATE:** OCT 1 2 2006          Clerk, by A. Williamson, Deputy
*(Fecha)*                      *(Secretario)*        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* MERCK & COMPANY, INC., a corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

EXHIBIT A PAGE 14

1    HECTOR G. GANCEDO (SBN 132139)
     TINA B. NIEVES (SBN 134384)
2    AMY M. BOOMHOUWER (SBN 221869)
     GANCEDO & NIEVES LLP
3    144 W. Colorado Boulevard
     Pasadena, California 91105
4    Telephone: (626) 685-9800
     Facsimile: (626) 685-9808

5

6    Attorneys for Plaintiff

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

               FOR THE COUNTY OF SAN DIEGO

9

10    EDNA GOYA, an individual;

11             Plaintiff,

12       vs.

13    MERCK & COMPANY, INC., a
     Corporation; McKESSON
14    CORPORATION, a Corporation; and
     DOES 1 through 100, inclusive.
15

16            Defendants.

17

CASE NO. **G I N 0 5 6 2 2 2**

**COMPLAINT FOR:**

1. **Strict Liability – Failure to Warn**
2. **Negligence**
3. **Breach of Implied Warranty**
4. **Breach of Express Warranty**
5. **Deceit by Concealment**
6. **Negligent Misrepresentation**
7. **Violation of Business and Professions Code §17200**
8. **Violations of Business and Professions Code §17500**
9. **Violation of Civil Code §1750**
10. **Medical Monitoring**

**DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

                    **COMPLAINT FOR DAMAGE**

                     1

All allegations made in this Complaint are based on information and belief except those allegations that pertain to Plaintiff, which are based upon personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and investigation conducted by Plaintiff's counsel.

## INTRODUCTION

This case involves the prescription drug Fosamax, which was manufactured, sold, distributed and promoted by Defendants primarily for the treatment and prevention of osteoporosis. Defendants misrepresented that Fosamax (alendronate sodium), a bisphosphonate, was a safe and effective treatment for osteoporosis, osteopenia and Paget's Disease, when in fact the drug caused serious medical problems.

## GENERAL ALLEGATIONS

1.  This is an action for personal injuries and damages brought on behalf of the Plaintiff who has been prescribed and supplied with, received, and who have taken and ingested and consumed the prescription drug Fosamax, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendants Merck & Company, Inc., McKesson Corporation and Defendants Does 1 through 100. This action seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiff to treat and monitor the dangerous, severe and life-threatening side effects caused by this drug.

2.  The true names or capacities, whether individual, corporate, or otherwise, of Defendants Does 1 through 100, Inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein.

**COMPLAINT FOR DAMAGE**

2

EXHIBIT  B  PAGE  16

1      3.      At all times herein mentioned, "Defendants" include all named herein as well as Defendants

2  Does 1 through 100.

3      4.      At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider

4  and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all

5  times operating and acting within the purpose and scope of said agency, service, employment, partnership,

6  conspiracy and joint venture and rendered substantial assistance and encouragement to the other

7  Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff.

8      5.      There exists, and at all times herein mentioned, there existed, a unity of interest in

9  ownership between certain Defendants and other certain Defendants such that any individuality and

10  separateness between the certain Defendants has ceased and these Defendants are the alter-ego of the other

11  certain Defendants and exerted control over those Defendants.  Adherence to the fiction of the separate

12  existence of these certain Defendants as an entity distinct from other certain Defendants will permit an

13  abuse of the corporate privilege and would sanction fraud and would promote injustice.

14      6.      The injuries of Plaintiff were caused by the wrongful acts, omissions, and fraudulent

15  misrepresentations of Defendants.

16      7.      At all times herein mentioned, one or more of the corporate Defendants was, and now is, a

17  corporation with its principal place of business in the State of California.

18      8.      At all times herein mentioned, one or more of the individual Defendants was, and now is a

19  resident of the State of California.

20      9.      At all times herein mentioned, the Defendants, and each of them were engaged in the

21  business of, or were successors in interest to, entities engaged in the business of research, licensing,

22  designing, formulating, compounding, testing, manufacturing, producing, processing, assembling,

23  inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the

24  prescription drug known as Fosamax for the use and ingestion by Plaintiff.

25      10.      At all times herein mentioned, the Defendants, and each of them, were authorized to do

26  business within the State of California and did in fact supply the aforementioned products within the State

27

28                                        3

**COMPLAINT FOR DAMAGES**

EXHIBIT  B  PAGE 17

1  of California.

2      11.    At all times herein mentioned, the officers and directors of the Defendants named herein

3  participated in, authorized and directed the production, promotion and/or the distribution of the

4  aforementioned product when they knew, or with the exercise of reasonable care should have known, of the

5  hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct

6  which resulted in the injuries suffered by Plaintiff herein.

7      12.    Plaintiff did not know and could not have reasonably known or suspected that the ingestion

8  of Fosamax caused her injuries until the required statutory time in which to file her claims. Plaintiff could

9  not, by the exercise of reasonable diligence, have discovered the wrongful cause of her injuries at an earlier

10  time because the injuries were caused without perceptible trauma or harm, and when Plaintiff's injuries

11  were discovered their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have

12  reason to suspect, that Plaintiff had been injured, the cause of the injury, or the tortious nature of the

13  conduct causing injury, until the required statutory time in which to file her claims. Additionally, Plaintiff

14  was prevented from discovering this information sooner because Defendants herein misrepresented and

15  continue to misrepresent to the public and to the medical profession that the drugs are safe and free from

16  serious side effects, and Defendants have fraudulently concealed facts and information that could have led

17  Plaintiff to discover a potential cause of action.

18

19                            **THE PARTIES**

20      **The Plaintiff**

21      13.    Plaintiff Edna Goya, a citizen of California who resides in San Diego County, took

22  Fosamax and was injured as a result.

23      **The Defendants**

24      14.    Defendant Merck & Company Inc., tested, studied, researched, evaluated, endorsed,

25  designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed,

26  marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise

27                                        **COMPLAINT FOR DAMAGES**

28                              4

EXHIBIT B  PAGE 18

1    placed in the stream of interstate commerce, Fosamax, which was ingested by Plaintiff.

2         15.    Defendant Merck & Company Inc., was and is an American pharmaceutical company,

3    incorporated under the laws of the State of new Jersey, whose principal place of business is One Merck

4    Drive, P.O. Box 100, Whitehouse Station, New Jersey.  On information and belief, said entity does

5    business in California and at all times relevant herein, it developed, manufactured, marketed, distributed,

6    and sold Fosamax in interstate commerce and in California.

7         16.    Defendant McKesson Corporation is incorporated and has its principal place of business in

8    San Francisco, California.  Based on information and belief, at all times relevant herein, McKesson was in

9    the business of promoting and distributing the pharmaceutical Fosamax.  Based on information and belief,

10   said entity does business in California and at all relevant times herein, it sold and distributed Fosamax in

11   California and in interstate commerce.

12        17.    Does 1 through 100, that acted independently of, or jointly with other Defendants,

13   that are in some manner legally responsible for the events and happenings herein referred to and caused

14   damages proximately and foreseeably to Plaintiff as alleged herein.

15

16                              **FACTUAL BACKGROUND**

17        18.    The compound alendronate is marketed by Defendants as Fosamax.  Fosamax is a

18   member of the bisphosphonate class of drugs.  The Food and Drug Administration approved Fosamax on

19   September 29, 1995 for the treatment of post-menopausal osteoporosis and Paget's disease.  Subsequent to

20   FDA approval, Fosamax was widely promoted, advertised and marketed by Defendants as a safe and

21   effective medication.

22        19.    Osteoporosis is a thinning and weakening of bones through the natural process of

23   bone remodeling.  In bone remodeling, osteoclasts (bone-eroding cells) break down bone through

24   resorption, and osteoblasts (bone-building cells) build bone back up again through bone formation.  These

25   processes usually are in balance and a stable bone mass is maintained.  Osteoporosis occurs when the

26   formation of new bone does not keep up with bone destruction and bones become weak and fragile.  As a

27

28                                    5                      **COMPLAINT FOR DAMAGES**

**EXHIBIT  B   PAGE  19**

1    bisphosphonate, Fosamax is designed to suppresses bone resorption by inactivating bone-eroding osteoclast

2    cells thus preserving bone density.

3         20.    As osteoporosis is a common and widespread disease, the market for osteoporosis

4    treatments is enormous. Nearly 200 million women worldwide suffer from osteoporosis – approximately

5    one-third of women aged 60-70 and two-thirds of women over the age of 80. In the United States,

6    approximately 44 million Americans are at risk for developing osteoporosis (approximately 55% of

7    Americans 50 years old or older) and current estimates are that 10 million Americans currently have the

8    disease with 34 million estimated to have low bone mass, putting them at great risk for the disease.[1]

9         21.    Today, the "global osteoporosis market exceeds $6 billion in annual sales, and with a

10    rapidly graying population, it's growing 25% a year."[2] Defendants command a large share of the

11    osteoporosis treatment market with Fosamax, the second best selling drug for the company with annual

12    sales in excess of $3.2 billion dollars.

13         22.    According to IMS Health, more than 22 million prescriptions were written for

14    Fosamax in 2005, up 2% from 2004.[3] Defendant's Fosamax continues to make IMS Health's "Leading 20

15    Products by Total U.S. Dispensed Prescriptions" and it is the world's best-selling osteoporosis treatment.

16    Defendant launched an aggressive advertising campaign for Fosamax, which paid off causing physician

17    visits for osteoporosis to nearly double.[4] Capitalizing on the increased attention to osteoporosis, in 2005

18

19        [1] Statistics are from National Osteoporosis Foundation, available online at:

20    http://www.nof.org/osteoporosis/diseasefacts.htm.

21        [2] See Business Week Online, "Rebuilding Amgen's Bones; A mass-market osteoporosis drug could

22    help reassure antsy investors," May 15, 2006, available online at:
   http://www.businessweek.com/magazine/content/06_20/b3984089.htm?chan=search.

23        [3] See IMS Health's "Leading 20 Products by Total U.S. Dispensed Prescriptions" available online

24    at: http://www.imshealth.com/ims/portal/front/articleC/0,2777,6599_73914140_77250364,00.html.

25        [4] See Consumer Reports, "Free rein for drug ads? A slowdown in FDA review has left consumers

26    more vulnerable to misleading messages", February 2003, available online at:
   http://www.consumerreports.org/cro/health-fitness/drugs-supplements/drug-ads-203/overview/index.htm.

27                                      **COMPLAINT FOR DAMAGES**

28                                   6

1 | Defendant obtained approval for an additional drug in the Fosamax family, Fosamax Plus D, which claims

2 | to have the additional value of providing a "minimum vitamin D intake consistent with the recommended

3 | guidelines..."[5]

4 |     23.    Bisphosphonates are divided into two classes of agents based on their chemical

5 | structure and molecular mechanism of action – simple bisphosphonates where there is no nitrogen

6 | functionality in their structure, and more potent nitrogen-containing bisphosphonates. Nitrogenous

7 | bisphosphonates are 10-100 times more potent at inhibiting bone resorption than simple bisphosphonates.

8 |     24.    Fosamax is a nitrogenous bisphosphonate. It is not metabolized in humans. The

9 | presence of a primary nitrogen atom in the molecule, and the non-metabolizing nature of the compound,

10 | results in Fosamax having a terminal half-life of more than ten years, which can result in a massive

11 | cumulative dose over the multi-year dosing cycle.

12 |     25.    In the 1990s and 2000s, medical articles and studies were published reporting the

13 | occurrence of osteonecrosis (bone death) and osteonecrosis of the jaw ("ONJ") when nitrogenous

14 | bisphosphonates were used in the treatment of cancer. Defendants knew or should have known that

15 | Fosamax, as a nitrogenous bisphosphonate, shared the mechanism of action and the adverse event profiles

16 | with similar drugs within the nitrogenous subclass.

17 |     26.    More specifically, Defendants knew or should have known that the osteoclast-

18 | inhibiting effect of Fosamax leads to cessation of bone remodeling and bone turnover, and induces

19 | cumulative ischemic changes to the human mandible (lower jaw) and maxilla (upper jaw).

20 |     27.    Defendants knew or should have known that these properties compromise the vascular

21 | supply to the area, which reduces the ability of a minor injury or disease to heal, which, in turn, can lead to

22 | osteonecrosis and osteomyelitis (bone marrow inflammation).

23 |     28.    ONJ is a serious medical condition that can result in significant disability such as

24 | irreversible joint collapse in the jaw. Bone death as in ONJ is typically not reversible, and consequently

25 |

26 |     [5] See Merck and Company, Inc.'s 2005 Annual Report, Financial Section, p. 23, available online at: http://www.merck.com/finance/annualreport/ar2005/pdf/Merck_2005_Financial_Section.pdf.

27 |                        **COMPLAINT FOR DAMAGE**

28 |                        7

1   physicians are limited to easing patient's pain and preventing the necrosis from spreading.

2         29.     After Defendants began selling/distributing Fosamax, reports of osteonecrosis, ONJ, and

3 other dental complications among its users began to surface. The early evidence indicated that Fosamax

4 shared the class effects of all nitrogenous bisphosphonates, yet Defendants declined to conduct further

5 study of the risk of osteonecrosis and ONJ in Fosamax users. Rather than evaluating and verifying the

6 safety of Fosamax with respect to ONJ, Defendant sought to broaden the uses of Fosamax, including

7 expanding approval to Fosamax D, and sought to extend the exclusivity of the patent for Fosamax through

8 2018.

9         30.     Since the launch of Fosamax in 1995, the Food and Drug Administration ("FDA")

10 has received a significant number of reports of osteonecrosis and ONJ among users of nitrogenous

11 bisphosphonates in general, and Fosamax specifically. In 2004, the FDA reported the results of their

12 review of the FDA adverse events database for bisphosphonates and concluded that the risk of

13 osteonecrosis and ONJ was not limited to intravenous nitrogenous bisphosphonates used in the treatment of

14 cancer, but also to Fosamax, an oral medication which shares the same mechanism of action as intravenous

15 bisphosphonates. The FDA concluded that osteonecrosis was a class effect based on the reported cases

16 involving Fosamax.

17         31.     Citing a continuing safety concern for Fosamax and intravenous bisphosphonates, the

18 FDA recommended and stated that Fosamax should include a warning on the label to alert unsuspecting

19 physicians and consumers of the risk of osteonecrosis. Defendants ignored the FDA's recommendation

20 and refused to include any type of warning for osteonecrosis on its label or otherwise. Physicians continue

21 to prescribe Fosamax without knowledge of the serious risk of osteonecrosis, and consumers continue to

22 take the medication believing there is no such risk. Indeed, Defendants continue to defend Fosamax and

23 downplay unfavorable findings.

24         32.     At the time Plaintiff and other Fosamax consumers took the drug, there were other

25 safer alternative treatments on the market for their osteoporosis condition.

26         33.     Defendants knew of the significant risk of osteonecrosis, and specifically ONJ, but did

27

28

8

**COMPLAINT FOR DAMAGES**

EXHIBIT  B  PAGE 22

1    not adequately and sufficiently warn physicians and consumers, including Plaintiff, of the risks.

2        34.    As a direct result, Plaintiff was prescribed Fosamax by her physician, and ingested

3    Fosamax as prescribed and in a foreseeable manner for a long period of time without knowledge of its

4    dangerous side effects. Plaintiff has suffered serious injury from the ingestion of Fosamax, and requires

5    and will require in the future ongoing medical care and treatment.

6        35.    As a direct result, Plaintiff suffered severe mental and physical pain and suffering and

7    has sustained permanent injuries and emotional distress.

8        36.    As a direct result, Plaintiff sustained economic loss, including loss of earnings and

9    diminution or loss of earning capacity.

10       37.    If Plaintiff had known the risks and dangers associated with Fosamax®, Plaintiff

11   would not have taken Fosamax and consequentially would not have been subject to its serious side effects.

12       38.    As a result of Defendant's actions, Plaintiff and her prescribing physicians were

13   unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff

14   had been exposed to the risks identified in this complaint, and that those risks were the direct and

15   proximate result of Defendants' acts, omissions, and misrepresentations.

16

17                                **FIRST CAUSE OF ACTION**

18                         **STRICT LIABILITY -- FAILURE TO WARN**

19                                **(Against all Defendants)**

20       39.    Plaintiff incorporates by reference to all preceding paragraphs as if fully set forth herein.

21       40.    Defendants are manufacturers and/or suppliers of Fosamax.

22       41.    The Fosamax manufactured and/or supplied by Defendants was and is unaccompanied by

23   proper warnings regarding all possible adverse side effects associated with the use of Fosamax and the

24   comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the

25   symptoms, scope or severity of the side effects.

26       42.    Defendants failed to perform adequate testing in that adequate testing would have shown

27                                                    **COMPLAINT FOR DAMAGES**

28                                         9

EXHIBIT  B  PAGE 23

1  that Fosamax possessed serious potential side effects with respect to which full and proper warnings

2  accurately and fully reflecting symptoms, scope and severity should have been made, with respect to the

3  use of this drug.

4        43.   The Fosamax manufactured and/or supplied by Defendants was defective due to inadequate

5  post-marketing warning or instruction because, after the manufacturer knew or should have known of the

6  risk of injury from Fosamax, it failed to provide adequate warnings to users or consumers of the product

7  and continued to aggressively promote the product.

8        44.   As the producing cause and legal result of the defective condition of Fosamax as

9  manufactured and/or supplied by Defendants, and as a direct and legal result of the negligence,

10  carelessness, other wrongdoing and action(s) of Defendants described herein:

11        a.    Plaintiff has been injured in health, strength and activity and suffered injuries to body and

12  mind, the exact nature and extent of which are not known at this time;

13        b.    Plaintiff sustained economic loss, including loss of earnings and diminution or loss of

14  earning capacity, the exact amount of which is presently unknown;

15        c.    Plaintiff required reasonable and necessary health care, attention and services and did incur

16  medical, health, incidental and related expenses. Plaintiff is informed and believes and thereon alleges

17  said Plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in

18  an amount as yet unascertained.

19                   **SECOND CAUSE OF ACTION**

20                      **NEGLIGENCE**

21                 **(Against all Defendants)**

22        45.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

23        46.   Defendants had a duty to exercise reasonable care in the manufacture, sale and/or

24  distribution of Fosamax into the stream of commerce, including a duty to assure that the product did not

25  cause users to suffer from unreasonable, dangerous side effects.

26        47.   Defendants failed to exercise ordinary care in the manufacture, design, formulation,

27

28                            10

**COMPLAINT FOR DAMAGE**

1  distribution, production, processing, assembly, inspection, marketing, labeling, packaging, preparation for

2  use and sale of Fosamax into interstate commerce in that Defendants knew or should have known that the

3  product Fosamax created a high risk of unreasonable, dangerous side effects, some of which, e.g.

4  osteonecrosis and ONJ, can cause extraordinary suffering.

5      48.   Defendants were negligent in the design, manufacture, testing , advertising, warning,

6  marketing, and sale of Fosamax in that they:

7      a.   Failed to use due care in designing and manufacturing Fosamax so as to avoid the above

8  risks to individuals when Fosamax was being used to treat osteoporosis and Paget's disease;

9      b.   Failed to accompany their product with proper warnings regarding all possible adverse side

10  effects associated with the use of Fosamax and the comparative severity and duration of such adverse

11  effects, the warnings did not accurately reflect the symptoms, scope or severity of the side effects;

12      c.   Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance

13  to determine the safety of Fosamax;

14      d.   Failed to provide adequate instruction and warning to medical care providers for the

15  appropriate use of Fosamax;

16      e.   Were otherwise careless or negligent.

17      49.   Despite the fact that Defendants knew or should have known that Fosamax caused

18  unreasonable, dangerous side effects which many users would be unable to remedy by any means,

19  Defendants continued to market Fosamax when there were safer alternative methods of treatment.

20      50.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably

21  suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

22      51.   Defendants' negligence was a proximate cause of Plaintiff's injuries, harm and economic

23  loss which she suffered and will continue to suffer as previously described.

## THIRD CAUSE OF ACTION

## FOR BREACH OF IMPLIED WARRANTY

### (Against all Defendants)

COMPLAINT FOR DAMAGES

28                                          11

52.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53.    At all times relevant herein, Defendants impliedly warranted to members of the public and health care providers that the product was of merchantable quality and safe and fit for use as a treatment for osteoporosis and Paget's disease.

54.    Plaintiff was and is unskilled in the research, design and manufacture of Fosamax and reasonably relied entirely on the skill, judgment and implied warranty of Defendants in using the product.

55.    At all times that Defendants marketed, sold and/or distributed Fosamax for use by Plaintiff, Defendants had actual or constructive knowledge of the particular purpose for which this drug was to be used by Plaintiff.

56.    At all times that Defendants marketed, sold and/or distributed Fosamax Defendants knew or had reason to know that Plaintiff was relying and in fact did rely on Defendants' implied warranties.

57.    Plaintiff and her physicians reasonably relied upon the skill and judgment of Defendants as to whether Fosamax was of merchantable quality and safe and fit for its intended use.

58.    Contrary to such implied warranty, Fosamax was not of merchantable quality or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above and Defendants have breached the implied warranty.

59.    As a direct and legal result of the breach of implied warranty, Plaintiff suffered and will continue to suffer damages, injury, harm and economic loss as alleged herein.

## FOURTH CAUSE OF ACTION
## FOR BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

60.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61.    At all times relevant, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Fosamax was safe, effective, fit and proper for its

**COMPLAINT FOR DAMAGE**

12

EXHIBIT  B  PAGE 26

1  intended use. In reliance upon said warranties, Plaintiff purchased said product.

2      62.    Plaintiff, along with the general public, relied directly and indirectly, upon said express

3  warranties made by Defendants, in connection with the use of Fosamax. Said express warranties were part

4  of the sale of the product, in that Defendants warranted the safeness of the product.

5      63.    Fosamax does not conform to these express representations because Fosamax is not safe and

6  has high levels of serious side effects, including disfiguring and life threatening side effects.

7      64.    As a direct and legal result of the breach of said warranties, Plaintiff suffered and will

8  continue to suffer damages, injury, harm and economic loss as alleged herein.

9                          **FIFTH CAUSE OF ACTION**

10          **(DECEIT BY CONCEALMENT – Cal. Civ. Code §1709 – 1710 )**

11                          **(Against all Defendants)**

12      65.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

13      66.    Defendants, from the time that Fosamax was first tested, studied, researched, evaluated,

14  endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff by

15  concealing from Plaintiff, Plaintiff's physicians and the general public, the true facts concerning Fosamax,

16  which Defendants had a duty to disclose.

17      67.    Defendants represented through its labeling, advertising, marketing materials, detail

18  persons, seminar presentations, publications, notice letters, and regulatory submissions that Fosamax was

19  safe and willfully withheld and concealed information about the substantial risks of using Fosamax.

20      68.    Defendants represented that Fosamax was safer than other alternative medications and

21  willfully concealed information which demonstrated that Fosamax was not safer than alternatives available

·22  on the market.

23      69.    At all times relevant herein, Defendants conducted a sales and marketing campaign to

24  promote the sale of Fosamax and willfully deceive Plaintiff, Plaintiff's physicians and the general public as

25  to the health risks and consequences of the use of Fosamax. Defendants were aware of the foregoing, and

26  that Fosamax was not safe, fit and effective for human consumption, the use of Fosamax is hazardous to

27                                          **COMPLAINT FOR DAMAGES**

28                          13

EXHIBIT  B   PAGE  27

1   health, and Fosamax has a serious propensity to cause serious injuries to users, including but not limited to

2   the injuries suffered by Plaintiff as delineated herein.

3        70.     Defendants intentionally concealed and suppressed the true facts concerning Fosamax with

4   the intent to defraud Plaintiff, in that Defendants knew that Plaintiff's physicians would not prescribe

5   Fosamax, and Plaintiff would not have used Fosamax, if they were aware of the true facts concerning the

6   dangers of Fosamax.

7        71.     As a result of the foregoing fraudulent and deceitful conduct by the Defendants, Plaintiff

8   suffered injuries and damages as alleged herein.

9                           ## SIXTH CAUSE OF ACTION

10                          ## NEGLIGENT MISREPRESENTATION

11                             ### (Against all Defendantss)

12       72.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

13       73.     From the time that Fosamax was first tested, studied, researched, evaluated, endorsed,

14  manufactured, marketed and distributed, and up to the present, Defendants made false misrepresentations,

15  as previously set forth herein, to Plaintiff, Plaintiff's physicians and the general public, including but not

16  limited to the misrepresentation that Fosamax was safe, fit and effective for human consumption.  At all

17  times relevant, Defendants conducted a sales and marketing campaign to promote the sale of Fosamax and

18  willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and

19  consequences of the use of the product.

20       74.     Defendants made the foregoing representations without any reasonable ground for believing

21  them to be true.  These representations were made directly by Defendants, by sales representatives and

22  other authorized agents of said Defendants, and in publications and other written materials directed to

23  physicians, medical patients and the public, with the intention of inducing reliance and the prescription,

24  purchase and use of Fosamax.

25       75.     The foregoing representations by the Defendants were in fact false, in that Fosamax was not

26  safe, fit and effective for human consumption, the use of Fosamax is hazardous to health, and Fosamax has

27                                                          **COMPLAINT FOR DAMAGE**

28                                      14

EXHIBIT _B_  PAGE _28_

1   a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by
2   Plaintiff as delineated herein.

3   76.    The foregoing representations by Defendants were made with the intention of inducing
4   reliance and the prescription, purchase and use of Fosamax.

5   77.    In reliance on the misrepresentations by Defendants, Plaintiff was induced to purchase and
6   use Fosamax. If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff
7   would not have used Fosamax. The reliance of Plaintiff upon Defendant's misrepresentations was justified
8   because such misrepresentations were made and conducted by individuals and entities that were in a
9   position to know the true facts.

10   78.    As a result of the foregoing negligent misrepresentations by Defendants, Plaintiff suffered
11   injuries and damages as alleged herein.

12                        **SEVENTH CAUSE OF ACTION**
13                   **VIOLATION OF BUSINESS & PROFESSION**
14                        **CODE SECTION 17200**
15                        **(Against all Defendants)**

16   79.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

17   80.    Plaintiff is informed and believes and thereon alleges that Defendants,
18   and each of them, by the acts and misconduct alleged herein, violated Business & Professions Code
19   sections 17200.

20   81.    On behalf of the general public, Plaintiff hereby seeks injunctive, restitutionary
21   and other equitable relief, as appropriate against Defendants, and each of them, for their violations of
22   section 17200.

23   82.    California Business & Professions Code section 17200 provides that unfair competition
24   shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue
25   or misleading advertising.

26   83.    The acts and practices described in Paragraphs 1 through 79, were and are likely to mislead

27                                      **COMPLAINT FOR DAMAGE**
28                            15

EXHIBIT B  PAGE 29

1   the general public and therefore constitute unfair business practices within the meaning of Business &

2   Professions Code §17200. The acts of untrue and misleading advertising set forth in preceding paragraphs

3   are incorporated by reference and are, by definition, violations of Business & Professions Code §17200.

4   This conduct includes, but is not limited to:

5        a.        Representing to Plaintiff, Plaintiff's physicians and the general public that Fosamax is safe,

6   fit and effective for human consumption, knowing that said representations were false, and concealing from

7   the Plaintiff, Plaintiff's physicians and the general public that Fosamax has a serious propensity to cause

8   injuries to users;

9        b.        Engaging in advertising programs designed to create the image, impression and belief by

10  consumers, physicians and others that the use of Fosamax, is safe for human use, has fewer side effects and

11  adverse reactions than other methods for treating osteoporosis, constituted a convenient, safe form for

12  treating osteoporosis and would not interfere with daily life, even though the Defendants knew these to be

13  false, and even though the Defendants had no reasonable grounds to believe them to be true;

14       c.        Purposely downplaying and understating the health hazards and risks associated with

15  Fosamax; and

16       d.        Issuing promotional literature deceiving potential users of Fosamax by relaying positive

17  information and manipulating statistics to suggest widespread acceptability, while downplaying the known

18  adverse and serious health effects and concealing material relevant information regarding the safety of

19  Fosamax.

20       84.       These practices constitute unlawful, unfair and fraudulent business acts or

21  practices, within the meaning of California Business & Professions Code §17200, as well as unfair,

22  deceptive, untrue and misleading advertising as prohibited by California Business & Professions Code

23  §17500.

24       85.       The unlawful, unfair and fraudulent business practices of Defendants described

25  above present a continuing threat to members of the public in that Defendants continue to engage in the

26  conduct described therein.

27

28

16

**COMPLAINT FOR DAMAGES**

EXHIBIT B  PAGE 30

86.     As a result of their conduct described above Defendants have been and will be unjustly enriched.  Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Fosamax in California, sold in large part as a result of the acts and omissions described herein.

87.     Because of the fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair or fraudulent business practices.

88.     Plaintiff, pursuant to California Business & Professions Code §17203, seeks an order of this court compelling the Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSION

### CODE SECTION 17500

#### (Against all Defendants)

89.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, by the acts and misconduct alleged herein, violated Business & Professions Code sections 17500.

91.     On behalf of the general public, Plaintiff hereby seeks injunctive, restitutionary and other equitable relief, as appropriate against Defendants, and each of them, for their violations of section 17500.

92.     California Business & Professions Code section 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

COMPLAINT FOR DAMAGES

17

EXHIBIT  B  PAGE  31

93.     At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by Business & Professions Code §17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Fosamax:

a.     Representing to Plaintiff, Plaintiff's physicians and the general public that Fosamax is safe, fit and effective for human consumption, knowing that said representations were false, and concealing from the Plaintiff, Plaintiff's physicians and the general public that Fosamax has a serious propensity to cause injuries to users;

b.     Engaging in advertising programs designed to create the image, impression and belief by consumers, physicians and others that the use of Fosamax, is safe for human use, has fewer side effects and adverse reactions than other methods for treating osteoporosis, constituted a convenient, safe form for treating osteoporosis and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

c.     Purposely downplaying and understating the health hazards and risks associated with Fosamax; and

d.     Issuing promotional literature deceiving potential users of Fosamax by relaying positive information and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of Fosamax.

94.     The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code §17500.

95.     The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

96.     As a result of their false and misleading statements described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Fosamax, sold in

**COMPLAINT FOR DAMAGE**

18

EXHIBIT B  PAGE 32

1  large part as a result of the false or misleading statements described herein.

2          97.    Pursuant to California Business & Professions Code §17535, Plaintiff seeks an

3  order of this court compelling the Defendants to provide restitution, and to disgorge the monies collected

4  and profits realized by Defendants, and each of them, as a result of their unfair business practices, and

5  injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the

6  future.

7          98.    Plaintiff seeks the imposition of a constructive trust over, and restitution and

8  disgorgement of, the monies collected and profits realized by Defendants, and each of them, to cease such

9  false and misleading advertising in the future.

10                          NINTH CAUSE OF ACTION

11          VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT –

12                 CIVIL CODE SECTION 1750 ET. SEQ

13                          (Against all Defendants)

14         99.    Plaintiff incorporates by reference herein Paragraphs 1 through 101 as though

15  fully set forth herein.

16         100.   Plaintiff is informed and believes and thereon alleges that Defendants, and each

17  of them, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act,

18  California Civil Code sections 1750 et. seq. ("CLRA")

19         101.   Plaintiff hereby seeks injunctive relief as appropriate against Defendants, and

20  each of them, for their violations of Civil Code sections 1750 et. seq.

21         102.   The CLRA applies to Defendants' actions and conduct described herein because

22  it extends to transactions which are intended to result, or which have resulted, in the sale of goods to

23  consumers.

24         103.   Plaintiff is a "consumer" within the meaning of California Civil Code §1761(d).

25         104.   Defendants have violated, and continue to violate, the CLRA in representing that

26  goods have characteristics and benefits which they do not have in violation of Civil Code §1770(a)(5).

27                                                    COMPLAINT FOR DAMAGE

28                                        19

1    105.    At all times herein mentioned Defendants have committed acts of disseminating

2   untrue and misleading statements as defined by Civil Code § 1770 by engaging in the following acts and

3   practices with intent to induce members of the public to purchase and use Fosamax:

4        a.    Representing to Plaintiff, Plaintiff's physicians and the general public that Fosamax was

5   safe, fit and effective for human consumption, knowing that said representations were false, and concealing

6   from Plaintiff, Plaintiff's physicians and the general public that said product had a serious propensity to

7   cause injuries to users;

8        b.    Engaging in advertising programs designed to create the image, impression and belief by

9   consumers and physicians that the use of Fosamax, was safe for human use, had fewer side effects and

10  adverse reactions that other methods for treating osteoporosis, and would not interfere with daily life, even

11  though the Defendants knew these to be false, and even though the Defendants had no reasonable ground to

12  believe them to be true;

13       c.    Purposely downplaying and understating the health hazards and risks associated with

14  Fosamax; and

15       d.    Issuing promotional literature deceiving potential users of Fosamax by relaying positive

16  information and manipulating statistics to suggest widespread acceptability, while downplaying the known

17  adverse and serious health effects and concealing material relevant information regarding the safety of said

18  product.

19       106.    The foregoing practices constitute false and misleading advertising and representations

20  within the meaning of Civil Code § 1770.

21       107.    The acts of untrue and misleading statements by Defendants described herein present a

22  continuing threat to members of the public and individual consumers in that the acts alleged herein are

23  continuous and ongoing, and the public and individual consumers will continue to suffer harm alleged

24  herein.

25       108.    Unless Defendants are enjoined from continuing to engage in these violations of the CLRA,

26  Plaintiff will continue to be harmed by the wrongful actions and conduct of Defendants.

27                                    COMPLAINT FOR DAMAGE

28                            20

EXHIBIT  B  PAGE 34

1      109.    Pursuant to Civil Code § 1780, Plaintiff seeks on order of this court for injunctive relief

2   calling for Defendants, and each of them, to cease such deceptive business practices in the future.

3                         ELEVENTH CAUSE OF ACTION

4        MEDICAL MONITORING: INJUNCTIVE AND EQUITABLE RELIEF

5                            (Against All Defendants)

6      110.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

7      111.    As a direct and legal result of Defendants' acts, Plaintiff has been exposed to a hazardous

8   substance and, as a result, suffers a significantly increased risk of contracting a serious injury or latent

9   disease, such as osteonecrosis and ONJ. This increased risk makes periodic diagnostic medical

10  examinations reasonably necessary. Monitoring and testing procedures exist which make the early

11  detection and treatment of such injuries or disease possible and beneficial.

12     112.    The increased susceptibility to injuries and irreparable threat to the health of Plaintiff

13  resulting from her exposure to this hazardous substance can only be mitigated or addressed by the creation

14  of a medical monitoring fund to provide for a medical monitoring program, including:

15     a.      Funding further studies of the long term effects on Fosamax users;

16     b.      Funding research into possible cures for the detrimental effects of using Fosamax;

17     c.      Gathering and forwarding to treating physicians information related to the diagnosis and

18  treatment of injuries which may result from using Fosamax;

19     d.      Aiding in the early diagnosis and treatment of resulting injuries though ongoing testing and

20  monitoring of Fosamax.

21     113.    Fosamax users have no adequate remedy at law in that monetary damages alone do not

22  compensate for the continuing nature of the harm to them, and a medical monitoring program which aids

23  their treatment can prevent the greater harms which may occur immediately and which may be preventable

24  if proper research is conducted and the health risks are diagnosed and treated before they occur or become

25  worse.

26     114.    Without a court-approved medical monitoring program, Plaintiff might not receive prompt

27                                                   **COMPLAINT FOR DAMAGES**

28                              21

EXHIBIT  B  PAGE 35

1  medical care which could detect and prolong her productive life, increase prospects for improvement and

2  minimize disability.

3

4  　　　　WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows,

5  as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff:

6  　　　1.　　General damages in an amount which will conform to proof at time of trial;

7  　　　2.　　Special damages in an amount within the jurisdiction of the Superior Court and according to

8  　　　　　　proof at the time of trial;

9  　　　3.　　Loss of earnings and impaired earning capacity according to proof at the time of trial;

10 　　　4.　　Medical expenses, past and future, according to proof at the time of trial;

11 　　　5.　　Damages for loss of care, comfort, society and companionship in an amount

12 　　　　　　within the jurisdiction of the Superior Court and according to proof.

13 　　　6.　　For past and future mental and emotional distress, according to proof;

14 　　　7.　　For punitive or exemplary damages according to proof;

15 　　　8.　　Restitution, disgorgement of profits, and other equitable relief;

16 　　　9.　　Injunctive relief;

17 　　　10.　　Attorney's fees;

18 　　　11.　　For costs of suit incurred herein;

19 　　　12.　　For pre-judgment interest as provided by law; and

20 　　　13.　　For such other and further relief as the Court may deem just and proper.

21

22  DATED: October 9, 2006                    GANCEDO & NIEVES

23

24

25  　　　　　　　　　　　　　　　　By:　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

26  　　　　　　　　　　　　　　　　　　Amy M. Boomhouwer
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

27
　　　　　　　　　　　　　　　　　　　　　　　　COMPLAINT FOR DAMAGES
28
　　　　　　　　　　　　　　　　22

EXHIBIT B PAGE 36

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED: October 9, 2006                    GANCEDO & NIEVES

By: _____
        Amy M. Boomhouwer
        Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES**

23

EXHIBIT ___B___ PAGE__3-1__

**EXHIBIT C**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Amy M. Boomhouwer (SBN 221869)
Gancedo & Nieves
144 West Colorado Boulevard
Pasadena, CA 91105

TELEPHONE NO.: 626-685-9800   FAX NO.: (626) 685-9808
ATTORNEY FOR (Name): Plaintiff, Edna Goya

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
X NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

CASE NAME: Goya v. Merck & Co.,

FOR COURT USE ONLY

C6 OCT 12 AM 11:21

CASE NUMBER: **G I N 0 5 6 2 2 2**

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| X Unlimited    Limited | Counter    Joinder | JUDGE: |
| (Amount demanded    (Amount demanded | Filed with first appearance by defendant | DEPT: |
| exceeds $25,000)    is $25,000 or less) | (Cal. Rules of Court, rule 1811) | |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- X Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Collections (09)
- Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/Inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)

- Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812 )**
- Antitrust/Trade regulation (03)
- Construction defect (10)
- Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition (not specified above) (43)

2. This case   X is   _ is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. _ Large number of separately represented parties
   b. X Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. X Substantial amount of documentary evidence
   d. X Large number of witnesses
   e. _ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. _ Substantial post-judgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. X monetary   b. X nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action (specify): Ten

5. This case   _ is   X is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 09, 2006

Amy M. Boomhouwer
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]
SDSC CIV-31 (Rev. 1-06)

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19
SD-CV31

EXHIBIT _C_ PAGE 38

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

INDEPENDENT CALENDAR CLERK
325 S. Melrose
Vista, CA 92081

TO:

| | |
|---|---|
| EDNA GOYA **Plaintiff(s)** | Case No.: **GIN056222** |
| vs. | **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** (CRC 1590.1) |
| MERCK & COMPANY, INC **Defendant(s)** | Judge: **MICHAEL B. ORFIELD** Department: **28** |

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management timelines.

☐ Court-Referred Mediation Program
☐ Private Neutral Evaluation
☐ Private Mini-Trial
☐ Private Summary Jury Trial
☐ Private Settlement Conference With Private Neutral
☐ Other (specify): _____

☐ Court-Ordered Nonbinding Arbitration, (Cases valued at $50,000 or less)
☐ Court-Ordered Binding Arbitration (Stipulated)
☐ Private Reference to General Referee
☐ Private Reference to Judge
☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

Name of Plaintiff          Name of Defendant

Signature          Signature

Name of Plaintiff's Attorney          Name of Defendant's Attorney

Signature          Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, Rule 225. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

IT IS SO ORDERED.

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359(Rev. 8-03)     ADR-STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS

EXHIBIT D   PAGE 39

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Use of Alternate Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court has established a Civil Mediation Program to replace the Mediation Pilot Program established by Code of Civil procedure sections 1730 et seq. The Civil Mediation Program, in effect for cases filed on or after May 1, 2003 or upon stipulation, is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participate in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute -- the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for court-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter III and Code of Civil Procedure 1141 et seq. address this program specifically.

EXHIBIT ▷ PAGE 40

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Use Alternative Dispute Resolution Process" which is included in this ADR Package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 338-2797.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

EXHIBIT  D  PAGE 41

**EXHIBIT E**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## INDEPENDENT CALENDAR CLERK
### 325 S. Melrose
### Vista, CA 92081

TO:

AMY M BOOMHOUWER
GANCEDO & NIEVES
144 WEST COLORADO BOULEVARD
PASADENA, CA 91105

| | | |
|---|---|---|
| EDNA GOYA | | Case No.: **GIN056222** |
| | Plaintiff(s) | **NOTICE OF CASE ASSIGNMENT** |
| | vs. | |
| MERCK & COMPANY, INC | | Judge: **MICHAEL B. ORFIELD** |
| | Defendant(s) | Department: **28** |
| | | Phone: **760-806-6347** |

**COMPLAINT FILED** 10/12/06

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document. (Rule 2.5)

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.) (Rule 2.6)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (Rule 2.7)

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141-10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING.

ALSO SEE THE ATTACHED NOTICE TO LITIGANTS.

### CERTIFICATE OF SERVICE

I certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at     VISTA California.

DATED: 10/12/06                                    BY: CLERK OF THE SUPERIOR COURT

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, #2100, Los Angeles, California 90067.

On November 21, 2006, I served the foregoing document(s) described as **DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 (b)** on the interested parties in this action addressed as follows:

SEE ATTACHED SERVICE LIST

☒    By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

     ☐    **BY PERSONAL SERVICE (CCP §1011):** I delivered such envelope(s) by hand to the addressee(s) as stated above.

     ☐    **BY MAIL (CCP §1013(a)&(b)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

     ☒    **BY OVERNIGHT DELIVERY (CCP §1013(c)&(d)):** I am readily familiar with the firm's practice of collection and processing items for delivery with Overnight Delivery. Under that practice such envelope(s) is deposited at a facility regularly maintained by Overnight Delivery or delivered to an authorized courier or driver authorized by Overnight Delivery to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

Executed on November 21, 2006 at Los Angeles, California

☐    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_Heather Briggs_
Heather Briggs

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

13

::ODMA\PCDOCS\BA2DOCS1\305894\1

# ATTACHED SERVICE LIST

Hector G. Gancedo, Esq.　　　　　*Attorneys for Plaintiff Betty Valiente*
Amy M. Boombouwer, Esq.
GANCEDO & NIEVES LLP
144 West Colorado Boulevard
Pasadena, CA 91105
Tel:　626 685-9800
Fax: 626 685-9808

Anthony G. Brazil, Esq.　　　　　*Attorneys for Defendant McKesson*
Kanika D. Corley, Esq.　　　　　　*Corporation*
MORRIS POLICY & PURDY
1055 W. Seventh Street, Suite 2400
Los Angeles, CA  90017
Tel:　213 891-9100
Fax: 213 488-1178

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

14

NOTICE OF REMOVAL

::ODMA\PCDOCS\BA2DOCS1\305894\1

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Edna Goya, an individual. | 06 NOV 21 PM 2: 41 <br> MERCK & COMPANY, INC., a Corporation; <br> MCKESSON CORPORATION, a Corporation; <br> DOES 1 through 100, inclusive, OF CALIFORNIA |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF <br> (EXCEPT IN U.S. PLAINTIFF CASES) | San Diego Cty. | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT                 DEPUTY <br> (IN U.S. PLAINTIFF CASES ONLY) |
|---|---|---|

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

US CV 2574 H      AJB

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Hector G. Gancedo, Tina B. Nieves, <br> Amy M. Boomhouwer, Gancedo & Nieves LLP <br> 144 W. Colorado Blvd., Pasadena CA 91105 <br> Tel: 626 685-9800, Fax: 626 685-9808 | Jeffrey M. Tanzer, Venable LLP <br> 2049 Century Park East, Suite 2100 <br> Los Angeles, CA 90067 <br> Tel.: 310-229-9900, Fax: 310-229-9901 |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)      FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | X 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. sec. 1441 and 28 U.S.C. sec. 1332.  Removal based on diversity jurisdiction and fraudulent joinder of co-defendant.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reappointment |
| 120 Marine | 310 Airplane | 362 Personal Injury-Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | X 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment &Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- 1 Original Proceeding
- X 2 Removal from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ Unlimited compensatory/punitive | Check YES only if demanded in complaint: <br> JURY DEMAND: X YES • NO |
|---|---|---|---|

VIII. RELATED CASE(S) IF ANY (See Instructions):      JUDGE                    Docket Number

DATE Nov. 21, 2006            SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

131971 $350 Sa 11/21/06

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, #2100, Los Angeles, California 90067.

On November 21, 2006, I served the foregoing document(s) described as **CIVIL COVER SHEET** on the interested parties in this action addressed as follows:

SEE ATTACHED SERVICE LIST

☒ By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

    ☐ **BY PERSONAL SERVICE (CCP §1011):** I delivered such envelope(s) by hand to the addressee(s) as stated above.

    ☒ **BY MAIL (CCP §1013(a)&(b)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

    ☐ **BY OVERNIGHT DELIVERY (CCP §1013(c)&(d)):** I am readily familiar with the firm's practice of collection and processing items for delivery with Overnight Delivery. Under that practice such envelope(s) is deposited at a facility regularly maintained by Overnight Delivery or delivered to an authorized courier or driver authorized by Overnight Delivery to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

Executed on November 21, 2006 at Los Angeles, California

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_Heather Briggs_
Heather Briggs

::ODMA\PCDOCS\LA1DOCS1\178027\1

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

UNITED STATES
DISTRICT COURT
Southern District of California
San Diego Division

# 131971 - A1
November 21, 2006

| Code | Case # | Qty | Amount |
|------|--------|-----|--------|
| CVW86900 3-06-CV-2574 | | | 60.00 CH |
| Judge - HUFF | | | |
| CVW86400 | | | 100.00 CH |
| 510000 | | | 190.00 CH |

Total->                350.00

FROM: CIVIL FILING
      EDNA GOYA V. MERCK & CO. INC
      ET AL
      DCH 42914  SH